# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| WSP USA INC., | |
| Plaintiff, | |
| v. | No. 19 CV 6731 |
| NAUTILUS INSURANCE COMPANY and GREAT DIVIDE INSURANCE COMPANY, | Judge Manish S. Shah |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

In this insurance-coverage dispute, plaintiff WSP USA Inc., seeks to recover defense and indemnification costs related to a now-settled lawsuit. The complaint asserts that defendants Nautilus Insurance Company and Great Divide Insurance Company owe coverage to WSP and the Chicago Transit Authority. Defendants each move to dismiss under Rule 12(b)(6). For the reasons below, Great Divide's motion is granted, and Nautilus's motion is granted in part, denied in part.

## I. Legal Standards

A complaint must contain a short and plain statement that plausibly suggests a right to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). I accept all factual allegations as true and draw all reasonable inferences in WSP's favor, but I disregard legal conclusions or "threadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678.

## II.     Background

In July 2011, the Chicago Transit Authority contracted with WSP for construction management services in connection with work on its elevated rail tracks. [54] at 9, ¶ 32.[1] The contract required WSP to obtain commercial general liability insurance on a primary basis with limits of $2,000,000 per occurrence. *Id.* ¶ 33. It also required the CTA to be named as an additional insured and certificate holder under any such policy. *Id.*

In October 2011, WSP entered a subcontract with GSG Consulting Inc., for construction management, quality assurance, and field engineering services related to the CTA project. *Id.* at 10, ¶¶ 34–35. The subcontract provided:

> Except as noted below … all the terms and conditions of the [CTA–WSP agreement] … and including any documents incorporated or referred to therein, are by this reference fully incorporated into and form a part of this Subcontract. Subcontractor assumes towards [WSP] all the obligations and responsibilities which [WSP], by the [CTA–WSP agreement], assumes towards [the CTA], and Subcontractor shall be bound to observe all such terms and conditions to the same extent as [WSP] is bound to [the CTA].

*Id.* at 170.[2] The subcontract also specified that GSG "shall effect and maintain during the performance of the Subcontract, [CTA] Insurance Requirements as set forth in [the CTA–WSP agreement], attached hereto and made a part hereof." *Id.* at 171.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

[2] WSP attaches the subcontract and Nautilus's insurance policy to the complaint. *See* [54] at 169–75, 513–79. I consider these documents as part of its pleading. *See* Fed. R. Civ. P. 10(c); *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) ("A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012))).

GSG, in turn, purchased a commercial general liability insurance policy from Nautilus, effective from August 2012 to August 2013. *Id*. at 11–12, ¶¶ 42–43. The policy indemnified and included a duty to defend GSG against suits for damages caused by bodily injury. *Id*. at 12, ¶ 44. The policy did not expressly name the CTA or WSP as additional insureds, but it provided coverage to additional insureds under certain conditions. Specifically, Section III of the policy provided coverage to GSG's "clients, provided a written contract or agreement is in effect between [GSG] and the client, and solely with respect to [GSG's] work performed by or on [GSG's] behalf for that client." *Id*. at 539. Further, "[s]uch written contract or agreement must be in effect prior to the occurrence giving rise to the claim or suit for which the client seeks coverage." *Id*. The policy also includes a blanket endorsement providing general liability coverage to "any person(s) or organization(s) when [GSG] and such person(s) or organization(s) have agreed in a written contract or written agreement that such person(s) or organization(s) be added as an additional insured on your policy," so long as "[s]uch written contract or written agreement [was] in effect prior to the performance of [GSG's] work which is the subject of such written contract or written agreement." *Id*. at 550.

In March 2014, Carlitos and Diana Lopez sued the CTA for negligence, alleging that one year earlier Carlitos had fallen and sustained serious injuries while working on an elevated train platform. *Id*. at 5, 7, ¶¶ 21, 26. In January 2015, the Lopezes amended their complaint, adding a claim against WSP for negligence. *Id*. at 5, ¶¶ 22–

24.[3] According to WSP, the Lopezes' allegations arose from GSG's duties and obligations under the subcontract. *Id*. at 16–17, ¶¶ 57–58, 62. WSP says it subcontracted to GSG all safety-related work under its contract with the CTA. *Id*. at 17, ¶ 60. A task order executed under the subcontract required GSG to provide a safety manager to monitor both construction management and contractor construction operations to ensure that work performed on site complied with approved safety plans. *Id*. at 11, 16–17, ¶¶ 39–40, 59. The order also required GSG to provide a lead field engineer and person-in-charge to support with construction inspections, supervision, operations on the CTA tracks. *Id*. at 11, ¶ 41. Despite these obligations, a GSG employee testified in the underlying case that she was the only GSG worker assigned to the project. *Id*. at 17, ¶ 61. The employee stated that her duties for GSG included ensuring that contractor employees were protected from falls when working from an elevated height. *Id*.

In March 2015, Liberty Insurance Corporation (WSP's primary insurer) tendered the underlying amended complaint to GSG and Nautilus for defense and indemnification costs. *Id*. at 15, ¶ 47. Nautilus acknowledged receipt the following month but otherwise did not respond until April 2018; it denied coverage. *Id*. at 15–16, ¶¶ 50, 52. In the interim, WSP filed a third-party complaint in the underlying action against GSG for breach of contract. *Id*. at 15, ¶ 51. After denying coverage in

---

[3] The underlying amended complaint named as defendants PB Americas, Inc. and Parsons Brinckerhoff, Inc., two former legal names of WSP. [54] at 5, ¶ 22. There's no dispute that these are WSP's former names. To avoid confusion, I refer to WSP by its current name throughout.

April 2018, Nautilus filed a declaratory-judgment action, *see Nautilus Insurance Company v. WSP USA, Inc. et al.*, 18 CV 02770 (N.D. Ill.), seeking to establish that it owed no duty to defend or indemnify WSP in the underlying action. *Id.* at 16, ¶ 53. When the Lopezes voluntarily dismissed their suit in September 2018, Nautilus and WSP agreed to dismiss the coverage action without prejudice. *Id.* at 8, 16, ¶¶ 29, 54. The Lopezes then refiled a materially identical complaint in January 2019, Nautilus continued to deny coverage, and Liberty and WSP paid defense fees and expenses in the underlying action before settling the case in October 2020. *Id.* at 16, 17, 19–20, ¶¶ 55–56, 63–64, 78.

WSP seeks a declaration that WSP and the CTA qualify as "additional insureds" under the Nautilus's policy, and therefore, Nautilus had a duty to defend the underlying action (Count I). WSP also seeks a declaration that Nautilus and Great Divide have a duty to indemnify WSP and the CTA in the underlying action (Count II), and that Nautilus is estopped from raising policy defenses because of its delay in responding to WSP's tender (Count III). Finally, WSP brings a breach of contract claim against both Nautilus and Great Divide (Count IV). Nautilus and Great Divide both move to dismiss.[4]

## III. Analysis

Under Illinois law, courts determine an insurer's duty to defend by comparing the allegations in the underlying complaint to the insurance policy's text. *Am.*

---

[4] The court has jurisdiction under 28 U.S.C. § 1332. WSP is a citizen of New York; Nautilus is an Illinois citizen; Great Divide is a citizen of North Dakota and Arizona; and the amount in controversy exceeds $75,000. [54] at 2–4, ¶¶ 5–8, 17.

*Bankers Ins. Co. of Fla. v. Shockley*, 3 F.4th 322, 327 (7th Cir. 2021). The duty to defend is broader than the duty to indemnify, arising even when the facts alleged in the underlying complaint only potentially fall within a policy's coverage. *See Lexington Ins. Co. v. Chicago Flameproof & Wood Specialties Corp.*, 950 F.3d 976, 980 (7th Cir. 2020). Any doubts about the duty to defend, including ambiguities in contractual language or the underlying complaint, are resolved in favor of the insured. *See Founders Insurance Co. v. Munoz*, 237 Ill.2d 424, 433 (2010). An insurer cannot refuse to defend a suit "unless it is clear from the face of the underlying complaint that the facts alleged do not potentially fall within the policy's coverage." *Zurich Am. Ins. Co. v. Ocwen Fin. Corp.*, 990 F.3d 1073, 1078 (7th Cir. 2021) (quoting *G.M. Sign, Inc. v. State Farm Fire and Cas. Co.*, 2014 IL App (2d) 130593, ¶ 25).

The scope of an insurance policy is a "pure question of law" to which "traditional principles of contract interpretation apply." *See Shockley*, 3 F.4th at 327. A court's "primary function" when "construing contracts for insurance is to ascertain and give effect to the parties' intent as expressed in the insurance contract's language." *W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 2021 IL 125978, ¶ 32. When a policy's terms are clear and unambiguous, courts must "give them their plain and ordinary meaning." *Id*. But if the terms are susceptible to more than one reasonable meaning, "they are considered ambiguous and will be construed strictly against the insurer who drafted the contract." *Id*.

## A.    Great Divide

The complaint alleges that Great Divide issued GSG an excess liability policy, and under its terms, Great Divide must indemnify WSP and the CTA. WSP identifies the excess policy number and attaches a certificate of insurance to the complaint. [54] at 14, ¶ 46; *id.* at 581.

Under Federal Rule of Civil Procedure 10(c), a "written instrument" attached as "an exhibit to a pleading is a part of the pleading for all purposes." As such, when the complaint references and relies upon an attached document in asserting a claim, "the contents of that document become part of the complaint and may be considered as such when the court decides a motion attacking the sufficiency of the complaint." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Further, when a plaintiff relies on the attached document and does not dispute its accuracy, "the facts communicated by that document control over allegations to the contrary." *Zablocki v. Merchants Credit Guide Co.*, 968 F.3d 620, 623 (7th Cir. 2020).

The certificate of insurance attached to the complaint contradicts WSP's contention that Great Divide issued GSG the excess policy. The certificate lists two insurers—Nautilus and Great Divide. [54] at 581. According to the certificate, Great Divide provided coverage for automobile liability and workers compensation and employers' liability, but Nautilus issued the excess liability policy. *Id.* The excess liability policy is the sole basis for WSP's claims against Great Divide, but the certificate demonstrates that it provided no such coverage. Accordingly, the claims against Great Divide (Counts II and IV) are dismissed with prejudice.

### B.      Nautilus

The complaint alleges that both WSP and the CTA are additional insureds under Section III of Nautilus policy and under the policy's blanket endorsement. To recap, Section III of the policy provides coverage to GSG's "clients, provided a written contract or agreement is in effect between [GSG] and the client, and solely with respect to [GSG's] work performed by or on [GSG's] behalf for that client," so long as "[s]uch written contract or agreement [was] in effect prior to the occurrence giving rise to the claim or suit for which the client seeks coverage." *Id.* at 539. The blanket endorsement provides coverage to "any person(s) or organization(s) when [GSG] and such person(s) or organization(s) have agreed in a written contract or written agreement that such person(s) or organization(s) be added as an additional insured on your policy," when "[s]uch written contract or written agreement [was] in effect prior to the performance of [GSG's] work which is the subject of such written contract or written agreement." *Id.* at 550.

#### 1.      *Coverage for the CTA*

The CTA is not a party in this action, but WSP insists that the CTA is an additional insured under the Nautilus policy. Not so. To be an additional insured under the policy, there must have been a written contract or agreement between the CTA and GSG. *See id.* at 539, 550. But only WSP and GSG signed the subcontract. *Id.* at 175. While the subcontract incorporates by reference the CTA–WSP agreement and imposes on GSG certain duties to WSP and the CTA, that does not transform the subcontract into a written agreement between the CTA and GSG. *See Westfield Ins.*

8

*Co. v. FCL Builders, Inc.*, 407 Ill.App.3d 730, 734 (1st Dist. 2011); *see also Pekin Ins. Co. v. CSR Roofing Contractors*, Inc., 2015 IL App (1st) 142473, ¶ 32 ("The mere reference to 'a written contract,' in the generic, should not be construed as a willingness by the insurer to incorporate, or acquiesce to, terms of a separate agreement … that were not negotiated and agreed to by the insurer and its insured(s), particularly if such terms contradict or alter the scope of coverage under the policy."). And there's no allegation that the CTA and GSG had any other written agreement to name the CTA as an additional insured. Without a written agreement with GSG, the CTA is not an additional insured under Section III or the blanket endorsement. *See Pekin Ins. Co. v. Centex Homes*, 2017 IL App (1st) 153601, ¶¶ 27–28 (finding only party that had written contract with named insured to be additional insured under similar provision).

### 2. *Coverage for WSP*

But the complaint plausibly alleges that WSP is an additional insured under Section III. Nautilus does not dispute that WSP was a client of GSG and that the subcontract was in effect before the alleged occurrence giving rise to the underlying claim. And WSP's complaint tells a plausible story that the allegations in the underlying complaint arose from deficiencies in GSG's safety-related work on WSP's behalf. *See* [54] at 16–17, ¶¶ 57–64. That is, the allegations in the complaint, taken as true, raise the plausible inference that Mr. Lopez's injuries arose from GSG's work under the subcontract. Whether Mr. Lopez's injuries are in fact attributable to any

work performed by GSG requires factual development. But the complaint's allegations, taken as true, are enough to survive dismissal.

Nautilus argues that the allegations in the underlying complaint cannot be attributed "solely" to GSG's work, so there's no coverage. [58] at 10. This misreads the policy, which provides coverage to additional insureds "solely with respect to [GSG's] work performed by or on [GSG's] behalf for that client." [54] at 539. Nautilus reads this provision to afford additional coverage only when GSG is entirely at fault for an occurrence. But the word "solely" imposes a different limitation: it confines an additional insured's coverage to only those damages attributable to GSG's work, not the work of others. Suppose a general contractor hired GSG and another subcontractor to perform work on a project and an occurrence arose in part from GSG's work, and in part from the other subcontractor's work. Under GSG's policy with Nautilus, the insurance company would cover the general contractor "solely with respect to" GSG's work, but not with respect to the other subcontractor's work. That Mr. Lopez's injuries may have been attributable to both WSP's and GSG's work does not preclude coverage under Section III, as long as the occurrence was in some way attributable to GSG's work.

Nautilus also says WSP is not covered under Section III because the Lopezes did not assert a claim against GSG in their complaint. *See* [58] at 10. But the underlying complaint need not expressly allege that the named insured was at fault. *See CSR Roofing Contractors*, 2015 IL App (1st) 142473, ¶ 50 (underlying complaint need not expressly allege that the named insured was negligent). Instead, courts may

10

"look beyond the underlying complaint in order to determine an insurer's duty to defend," *see Pekin Ins. Co. v. Wilson*, 237 Ill.2d 446, 459 (2010), and can "consider the written agreements between the named insured and the additional insured in determining whether the insurer has a duty to defend an additional insured." *Centex Homes*, 2017 IL App (1st) 153601, ¶ 35. A court may determine that the named insured is the negligent actor "even where the complaint does not include allegations against" it. *Id.* ¶ 36. What matters is whether the underlying complaint contains "facts to support a theory of recovery for the underlying plaintiff based on the negligence of the named insured." *Id.* ¶ 39.

Considering the underlying allegations, the subcontract between WSP and GSG, and the Nautilus policy, the complaint plausibly suggests the Lopezes' claims were based on GSG's negligence. The Lopezes leveled negligence allegations against WSP "and/or … servants, agents, or representatives acting within the course and scope of their employment pursuant to contract and/or otherwise voluntarily." [54] at 162–63. They alleged that Mr. Lopez's injuries stemmed from failure to protect "personnel engaged in work at the subject premises, including the protection of plaintiff." *Id.* at 163. As discussed above, WSP alleges that it subcontracted safety-related work to GSG, which required GSG to ensure that the worksite site complied with safety protocols. *Id.* at 11, 16–17, ¶¶ 39–41, 59–61. The allegations in WSP's complaint raise a reasonable inference that the underlying injury arose from GSG's work performed on its behalf under the subcontract. Thus, the complaint plausibly alleges coverage for WSP (for GSG's work on the CTA project) under Section III.

WSP also plausibly alleges coverage under the blanket endorsement. The blanket endorsement requires: (1) a written agreement between GSG and WSP to add WSP as an additional insured on GSG's policy; and (2) that such agreement be in effect prior to the performance of GSG's work under the subcontract. *Id*. at 550. There's no question that the WSP–GSG subcontract was in effect before GSG performed its work, so the question is whether the subcontract constitutes an agreement to add WSP as an additional insured on GSG's policy.

It does, albeit through some hoops. The subcontract requires GSG to assume towards WSP all obligations and responsibilities that WSP assumed towards the CTA under the CTA–WSP agreement. *Id*. at 170. Under that agreement, WSP was obligated to obtain commercial general liability insurance and to add the CTA as an additional insured. *Id*. at 74. It follows that, by agreeing to assume all such obligations towards WSP, GSG agreed to name WSP as an additional insured. In other words, the contractual language of assumption substitutes GSG for WSP, and WSP for the CTA—what WSP agreed to do with the CTA (name it as an additional insured), GSG agreed to do with WSP (name it as an additional insured). WSP argues that the subcontract's mandate that GSG obtain insurance meeting the CTA's specification precludes such a finding. But there's no inconsistency in requiring GSG to assume all obligations towards WSP, on the one hand, and requiring GSG to obtain insurance that comports with the CTA's requirements, on the other. And while the subcontract notes limited exceptions of obligations from the CTA–WSP contract not

assumed under the subcontract, *see id*. at 170, the requirement to obtain insurance and name WSP as an additional insured is not one of them.

Under both policy provisions, additional-insured status applies only when claims or suits arise from GSG's work for WSP. *See id*. at 539, 550. Whether GSG in fact performed the work that WSP alleges requires factual development; that issue will ultimately determine Nautilus's duties to WSP.[5] At this stage, the complaint adequately alleges coverage.[6]

### 3. *Joinder of Liberty*

Finally, Nautilus asks that I order the joinder of Liberty as a necessary party. Whether Liberty is a necessary party under Federal Rule of Civil Procedure 19 depends on "(1) whether complete relief can be accorded without joinder, (2) whether [Liberty's] ability to protect [its] interest will be impaired, and (3) whether the existing parties will be subjected to a substantial risk of multiple or inconsistent

---

[5] Defendants also argue that plaintiff's estoppel claim is inapplicable because there's no coverage. It would be premature to determine whether estoppel applies before determining whether a duty to defend exists because "estoppel doctrine applies only where an insurer has breached its duty to defend." *Emps. Ins. of Wausau v. Ehlco Liquidating Tr.*, 186 Ill.2d 127, 151 (1999). Whether Nautilus has a duty to defend WSP depends on whether the Lopezes' underlying claims resulted from GSG's work on WSP's behalf, and that issue requires factual development. So whether Nautilus is estopped from asserting any policy defenses is an issue for another day.

[6] Nautilus asserts that the claims for declaratory relief and the breach of contract claim are redundant, and therefore, I should dismiss Counts I and II. Courts may decline to exercise their discretion over declaratory judgment actions "when the declaratory judgment claim substantially overlaps with the plaintiff's substantive claims." *North American Elite Insurance Co. v. Menard Inc.*, No. 19 C 6528, 2020 WL 5810411, at *7 (N.D. Ill. Sept. 30, 2020); *see also Cohn v. Guaranteed Rate Inc.*, 130 F.Supp.3d 1198, 1206 (N.D. Ill. 2015) (collecting cases). While there's some overlap here, the declaratory claims implicate certain issues that the breach of contract claim does not (*e.g.*, whether estoppel doctrine would preclude policy defenses to the duty to defend). I decline to dismiss the claims as duplicative.

obligations unless he is joined." *Davis Companies v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001) None of these considerations weigh in favor of requiring Liberty's joinder. First, "it is entirely possible to accord complete relief among the existing parties" in Liberty's absence. *See Altom Transp., Inc. v. Westchester Fire Ins. Co.*, 823 F.3d 416, 420 (7th Cir. 2016). In Illinois, "if an insured plaintiff has even a *de minimis* pecuniary interest in the lawsuit, that interest is sufficient to allow a subrogation action to be maintained in plaintiff's name." *Orejel v. York Int'l Corp.*, 287 Ill.App.3d 592, 604 (1997).

Here, WSP alleges far more than a de minimis stake in the outcome—it says it paid $250,000 for its deductible toward the defense and indemnification of the underlying action. [54] at 23, ¶ 97. While Liberty has an ostensible interest in recouping its payments, WSP has an interest in at least as much as the deductible it paid and its claim is the same whether Liberty's payments are within the scope of relief or not. Nothing about the outcome of this case will impair Liberty's ability to protect its interests and there is no risk, let alone a substantial one, that WSP or Nautilus will be subjected to inconsistent obligations unless Liberty is joined.

14

## IV.   Conclusion

Great Divide's motion to dismiss, [65], is granted. The Clerk will terminate Great Divide as a party to this action. Nautilus's motion to dismiss, [57], is granted in part, denied in part. The CTA is not an additional insured, but WSP might be. Nautilus shall answer the amended complaint by November 4, 2021. The parties shall file a status report with a proposed schedule to complete the remainder of discovery by November 12, 2021.

ENTER:

_____
Manish S. Shah
United States District Judge

Date:  October 14, 2021

15